IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

FORT MYERS DIVISION

FOCUS CORPORATE FINANCE LIMITED
d/b/a FOCUS CAPITAL PARTNERS,
a foreign corporation, and
WINCHESTER CAPITAL PARTNERS LLC,          Civil Action No.
a Connecticut limited liability company,

Plaintiffs,

v.

E2 COMPANIES, LLC,
a Florida limited liability company, and
JAMES RICHMOND, an individual,

Defendants.
_____/

**COMPLAINT FOR FRAUD, FRAUDULENT INDUCEMENT, NEGLIGENT
MISREPRESENTATION, TORTIOUS INTERFERENCE WITH
CONTRACT, AND AIDING AND ABETTING FRAUD**

Plaintiffs, Focus Corporate Finance Limited d/b/a Focus Capital Partners

("**Focus**") and Winchester Capital Partners LLC ("**Winchester**," and together with

Focus, "**Plaintiffs**" or "**Focus/Winchester**"), by and through undersigned counsel,

sue Defendants E2 Companies, LLC ("**e2**") and James Richmond ("**Richmond**,"

and together with e2, "**Defendants**"), and allege:

## INTRODUCTION

This case arises from a high-stakes energy transaction in which Defendants, e2 and its CEO, James Richmond, courted Plaintiffs as exclusive advisors, while also concealing critical financial, regulatory, and litigation problems, and then undercut Plaintiffs out of the very deal Plaintiffs created. Relying on Defendants' assurances and omissions, Plaintiffs invested enormous time and resources to deliver a business combination with Nabors Energy Transition Corp. II ("**NETD**") and Liffey Merger Sub, LLC ("**Merger Sub**" and together with NETD, "**NETD**") and a related commercial contract, only to watch Defendants slow-walk diligence, secretly renegotiate key terms, abandon the transaction, and repudiate their economic commitments. Plaintiffs seek to recover under New York tort law for fraud, fraudulent inducement, negligent misrepresentation, fraudulent concealment, tortious interference, and aiding and abetting fraud, and to obtain compensatory and punitive damages for the millions of dollars in fees and opportunities Defendants' misconduct destroyed.

## I.    NATURE OF THE ACTION

1.      This is a commercial tort action under New York. Defendants used false statements, material omissions, and a pattern of bad-faith conduct to induce Plaintiffs to enter, amend, and continue a high-stakes, exclusive advisory engagement with e2,

then excluded Plaintiffs from the core transaction and refused to honor the economic structure Plaintiffs relied on.

2.    Plaintiffs do not seek to enforce the specific payment terms of the July 18, 2024, Engagement Letter and the December 5, 2024, Amendment (together, the "**Engagement Agreement**"). Plaintiffs expressly exclude and reserve any contract claims "arising under" the Engagement Agreement, including claims for the $8,000,000.00 transaction fee, for separate resolution in arbitration or other proceedings as appropriate.

3.    Instead, Plaintiffs assert independent tort claims: fraud, fraudulent inducement, negligent misrepresentation, fraudulent concealment, tortious interference with contract, and aiding and abetting fraud. These claims rest on duties imposed by New York common law, not on the Engagement Agreement alone, and are asserted in substantial part against Richmond, a non-signatory who never agreed to arbitrate with Plaintiffs.

4.    Plaintiffs seek compensatory and punitive damages well in excess of $75,000, exclusive of interest and costs.

## II.    JURISDICTION AND VENUE

5.    This Court has original subject-matter jurisdiction under 28 U.S.C. § 1332(a). The amount in controversy exceeds $75,000, exclusive of punitive damages, interest, and costs, and the action is between citizens of different States,

with a citizen or subject of a foreign state as an additional party. Complete diversity exists between all Plaintiffs, on the one hand, and all Defendants, on the other.

6.    Plaintiff, Focus, is an Irish company with its principal place of business in Dublin, Ireland. Focus is therefore a citizen or subject of a foreign state within the meaning of 28 U.S.C. § 1332.

7.    Plaintiff Winchester Capital Partners LLC is a limited liability company organized under the laws of the State of Connecticut. None of Winchester's members is a citizen of Florida. For purposes of 28 U.S.C. § 1332, Winchester is a citizen of one or more States other than Florida.

8.    Defendant, e2, is a limited liability company organized under the laws of the State of Florida, with its principal place of business at 8901 Quality Road, Bonita Springs, Florida 34135, in Lee County, Florida. Upon information and belief, all members of e2 are citizens of Florida. e2 is therefore a citizen of Florida for purposes of 28 U.S.C. § 1332.

9.    Defendant, Richmond, is an individual domiciled in Florida and is therefore a citizen of Florida.

10.    Accordingly, no Plaintiff is a citizen of Florida, and all Defendants are citizens of Florida. Complete diversity of citizenship exists, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

11.    This Court has personal jurisdiction over Defendants consistent with Federal Rules of Civil Procedure, Florida's long-arm statute, and due process. Defendants reside in Florida, conduct substantial business in Florida, and committed tortious acts in Florida that caused the injuries alleged here.

12.    Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (2) because  (a) all Defendants reside in the State of Florida and at least one Defendant (e2) resides in this District, and (b) a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District, including in Lee County, which lies within the Fort Myers Division of the Middle District of Florida.

## III.    PARTIES AND BACKGROUND FACTS

### A. The Parties

13.    Plaintiff, Focus, is an Irish corporate finance advisory firm headquartered in Dublin. Focus and Winchester frequently partner on cross-border transactions.

14.    Plaintiff, Winchester, is a Connecticut-based strategic advisory firm that provides corporate finance and M&A advisory services.

15.    Defendant, e2, is a Florida limited liability company with its principal place of business in Bonita Springs, Florida. e2 is engaged in renewable-energy manufacturing, storage, and related operations, including a project in Ireland.

16.     Defendant, Richmond, is the Founder and Chief Executive Officer of e2. He exercised substantial control over e2's operations and its relationship with Plaintiffs, and he was a central actor in the conduct at issue.

17.     Other officers, employees, and agents of e2, whose identities and precise roles are known primarily to e2, also participated in the acts and omissions alleged here, acting at Richmond's direction or with his approval.

**B. The Engagement Agreement and Amendment**

18.     On or about July 18, 2024, e2, Focus, and Winchester executed an Engagement Letter for Strategic Advisory Services (the "**Engagement Letter**"). A true and correct copy of the Engagement Letter is attached hereto and incorporated herein as **Exhibit 1**.

19.     Pursuant to the Engagement Letter, Plaintiffs agreed to act as e2's exclusive advisors to assist in executing transactions to maximize the sale value of e2's assets, shares, debt, intellectual property, and related subsidiary property assets (the "**Transactions**").

20.     The Engagement Letter granted Plaintiffs an exclusive mandate, with narrow exceptions, to identify and approach potential buyers, investors, and counterparties; to manage a sale or strategic alternatives process; and to assist with negotiations, due diligence, and closing.

21.    The Engagement Letter requires a New York choice-of-law clause providing that the agreement "shall be governed by and construed in accordance with the laws of the State of New York."

22.    On or about December 5, 2024, the parties executed an Amendment to the Engagement Letter (the "**Amendment**" and collectively the Engagement Letter and Amendment shall be referred to herein as the "**Engagement**"), which e2 signed on or about January 24, 2025. A true and correct copy of the Amendment is attached hereto and incorporated herein as **Exhibit 2**.

23.    The Amendment revised Section III(b)(i) of the Engagement Letter. It tied Plaintiffs' compensation to a strategic partnership and business combination with NETD, including a fixed transaction fee of $8,000,000.00 upon completion of the NETD transaction and issuance of NETD shares to e2's shareholders.

24.    The Amendment states that it "replaces the calculation of the fee schedule in Section III b (i) of the engagement letter" and that "[a]ll other terms and conditions of the engagement letter remain unchanged."

25.    e2 entered a Mutual Non-Disclosure Agreement with Focus and Winchester (the "**NDAs**"), which generally prohibit the disclosure of confidential information; as such, the allegations made within this Complaint are made in reflection of said agreement. Plaintiffs provided Defendants with a copy of the draft complaint, which included more specific allegations of misrepresentation and fraud,

on December 17, 2025. Defendants have not responded or otherwise provided authority to bypass the NDAs prior to the filing of this Complaint.

**C. Plaintiffs Introduce NETD and e2's Approval of Agreement**

26.     After the original Engagement Letter took effect, Plaintiffs conducted a global search for potential acquirers and strategic partners for e2, including public companies, private companies, private equity firms, and strategic investors.

27.     Plaintiffs identified and introduced NETD, a special-purpose acquisition company sponsored by Nabors, as a prospective business-combination partner for e2.

28.     At e2's request, Plaintiffs arranged meetings, led negotiations, and facilitated both a strategic partnership and a proposed business combination between e2 and NETD. This work included coordinating a Non-Disclosure Agreement and building out an extensive electronic data room with more than a thousand files.

29.     Plaintiffs worked intensively with Nabors, its counsel, and its accountants over many months. Plaintiffs led strategy discussions, advised on structure, and managed the transaction process.

30.     These efforts culminated in a Business Combination Agreement (the "**BCA**") dated on or about February 12, 2025, among e2, and Liffey Merger Sub, LLC, a wholly owned subsidiary of NETD.

31.    Prior to the execution of the BCA, on September 13, 2024, a jointly approved process letter (the "**Process Letter**") was agreed upon between Focus/Winchester and e2. The Process Letter required that NETD and e2 work through Plaintiffs as exclusive advisors for communications, diligence, and negotiations so that the process would be orderly and counterparties would be treated consistently.

32.    Plaintiffs' work also yielded a commercial contract with NETD for approximately $6,000,000 in purchase orders as part of a broader strategic relationship, providing e2 with significant commercial benefits beyond the BCA itself.

**D. Defendants' Pattern of Misrepresentations and Omissions**

33.    To persuade Plaintiffs to enter into the Engagement Letter and Amendment, including a significant reduction in their fee, and to devote substantial time and resources to the BCA, Defendants made a series of material misrepresentations and omissions of present fact, including:

   a. Financial condition and projections. Richmond and other senior e2 personnel materially misrepresented e2's financial condition and projections.

   b. Litigation and regulatory exposure. e2 and Richmond either failed to disclose, or disclosed only belatedly, material litigation and regulatory exposure.

These matters were highly material to transaction diligence and to Plaintiffs' own risk assessment and strategy, yet they were not timely or fully disclosed.

   c. Adherence to the process and exclusivity. e2 and Richmond assured Plaintiffs that:

      i. e2 would honor Plaintiffs' exclusive advisory mandate; and

     ii. e2 and Nabors/NETD would comply with the Process Letter, routing communications, diligence, and negotiations through Plaintiffs.

In reality, e2 and Richmond held direct, undisclosed meetings with Nabors and NETD. In those meetings, they agreed to significant changes to economics and pursued alternative financing and investors behind the Plaintiffs' backs. After these side meetings, Nabors canceled weekly progress meetings with Plaintiffs, and e2 and Richmond accepted that change without restoring Plaintiffs' agreed role.

   d. Intent to perform in good faith. e2 and Richmond repeatedly represented that they intended to move in good faith toward closing the BCA and to honor their obligations to Plaintiffs. In reality, as reflected in e2's later Verified Counterclaims in the Delaware Court of Chancery seeking rescission of the BCA, and in e2's conduct in slowing and obstructing diligence, e2 and Richmond intended to frustrate or abandon the BCA while still leveraging Plaintiffs' work product and relationships.

    34.   Plaintiffs reasonably relied on these statements and omissions in agreeing to the Engagement Letter, agreeing to the Amendment and fee reduction, devoting substantial time to the NETD transaction, and foregoing other opportunities.

**E. Conflicting Instructions, Side-Deals, and Exclusion of Plaintiffs**

35.    During the engagement, e2's leadership, including Richmond, gave Plaintiffs conflicting instructions, undermined the agreed transaction process, and ultimately pushed Plaintiffs to the margins of the BCA.

36.    Early in the engagement, Plaintiffs circulated a Process Letter for e2's approval. e2 approved it, and it was transmitted to all interested parties, including Nabors. The Process Letter required that expressions of interest and negotiations proceed through Focus and Winchester.

37.    Despite that structure, e2, acting through Richmond and other insiders, held private meetings and negotiations with NETD, including:

a.  meetings concerning litigation and regulatory exposure.

b.  meetings concerning material terms and conditions of the BCA; and

c.  meetings to explore alternative third-party investments and funding arrangements, including in the Middle East, and to consider abandoning or restructuring the BCA.

38.    After these undisclosed meetings, Nabors informed Plaintiffs that weekly progress calls were no longer necessary. e2 and Richmond accepted this change, did not insist that Nabors comply with the Process Letter, and did not restore Plaintiffs to their agreed central role.

39.    Plaintiffs nonetheless continued to manage the data room and to support diligence. On or about April 22, 2025, Plaintiffs circulated a detailed diligence list

identifying eighteen categories of information needed to complete the transaction. e2 provided only a fraction of the requested materials and deliberately slowed the flow of accounting and other information beyond any reasonable period.

40.    Richmond admitted, in substance, that he intended to use the withholding of diligence materials to frustrate the BCA while he focused on alternative funding and valuation strategies.

41.    e2 never provided Plaintiffs with timely notice that it intended to seek to terminate or rescind the BCA. Plaintiffs learned of e2's rescission theory only when e2 filed Verified Counterclaims and an Answer on or about August 8, 2025, in the Delaware Court of Chancery, in response to a specific-performance lawsuit filed by NETD (the "**Enforcement Lawsuit**").

**F. Default Demand Letter and Resulting Damages**

42.    Plaintiffs devoted substantial resources to the e2 mandate and the NETD transaction. Had e2 proceeded in good faith, Plaintiffs would have earned the $8,000,000 transaction fee set out in the Amendment, as well as other compensation tied to the successful completion of the transaction.

43.    When it became clear that e2 had abandoned its obligations, Plaintiffs, through undersigned counsel, served a Default Demand and Preservation-of-Evidence Letter dated September 5, 2025 (the "**Default Letter**"). The Default Letter is attached hereto and incorporated herein as **Exhibit 3**.

44.    In the Default Letter, Plaintiffs demanded immediate payment of a $4,500,000.00 break-up fee under the Engagement Agreement, described e2's unauthorized side dealings with NETD, and noted the then-pending Enforcement Litigation and e2's counterclaims seeking rescission of the BCA. The Default Letter also demanded that e2 preserve relevant documents and electronically stored information.

45.    Despite receiving the Default Letter, e2 refused to cure or pay. Later, in a meeting in Ireland, Richmond acknowledged the $4,500,000.00 break-up fee and promised to pay part in cash before Christmas 2025 and the balance in monthly installments. He then repudiated that commitment and offered only $500,000.00 in full settlement, which Plaintiffs reasonably rejected as commercially unreasonable.

46.    As a direct and foreseeable result of Defendants' conduct, Plaintiffs have suffered substantial damages, including:

   a. the lost $8,000,000.00 transaction fee that would have been earned had e2 honored its obligations and proceeded in good faith toward closing the NETD transaction;

   b. the substantial time, effort, and expenses Plaintiffs devoted to the engagement and BCA process, to the exclusion of other business opportunities; and

   c. reputational and business harm associated with being tied to a transaction and counterparty burdened by undisclosed regulatory and litigation issues and by e2's failure to complete the transaction in good faith.

47.    Plaintiffs expressly reserve all rights to pursue contract claims for unpaid fees and other disputes "arising under" the Engagement Agreement in a

13

separate arbitration or proceeding. Filing this Complaint does not waive any such rights.

**COUNT I**
**FRAUD AND FRAUDULENT INDUCEMENT**
(Against e2 and Richmond, Jointly and Severally)

48.    Plaintiffs reallege and incorporate by reference the preceding paragraphs as though fully set forth here.

49.    Under New York law, fraud and fraudulent inducement require: (1) a material misrepresentation or omission of present fact; (2) made with knowledge of its falsity; (3) with intent to induce reliance; (4) justifiable reliance by the plaintiff; and (5) damages.

50.    As set out above, e2 and Richmond made numerous material misrepresentations and omissions of present fact, including misstatements and concealments about:

a.  e2's actual and projected financial conditions;

b.  the existence of litigation and regulatory issues;

c.  e2's intent and commitment to honor Plaintiffs' exclusive advisory mandate and the Process Letter;

d.  e2's and Richmond's intent to move in good faith toward closing the BCA and to cooperate with Plaintiffs on diligence; and

e.  e2's present intent and ability to compensate Plaintiffs in line with the fee structures reflected in the Engagement Letter and Amendment.

14

51.     These statements and omissions were material. Accurate information about e2's financial condition, compliance, litigation and regulatory exposure, and true intentions regarding the BCA and advisory relationship would have been critical to Plaintiffs' decisions whether to accept the engagement, reduce their fee, and continue to devote substantial time and resources to the mandate.

52.     Defendants knew, or were reckless in not knowing, that their statements were false and that their omissions rendered their partial disclosures misleading.

53.     Defendants made these statements and omissions with the intent that Plaintiffs rely on them in entering the Engagement Letter, agreeing to the Amendment and fee reduction, continuing their advisory services, and foregoing other engagements.

54.     Plaintiffs reasonably and justifiably relied on Defendants' representations and omissions. Given the exclusive advisory relationship and Defendants' control over internal financial and legal information, Plaintiffs were entitled to rely on what Defendants chose to say—and not say.

55.     As a direct and proximate result of Defendants' fraud and fraudulent inducement, Plaintiffs suffered substantial damages, including lost fees, lost business opportunities, wasted resources, and other consequential damages, in an amount to be proven at trial but believed to exceed $8,000,000.

56.    Defendants' conduct was willful, wanton, and in bad faith. Under New York law, Plaintiffs are entitled to punitive damages to punish and deter such conduct.

**WHEREFORE**, Plaintiffs request judgment on Count I against e2 and Richmond, jointly and severally, for compensatory damages, punitive damages, pre- and post-judgment interest, costs, and such other and further relief as the Court deems just and proper.

### COUNT II
### NEGLIGENT MISREPRESENTATION
(Against e2 and Richmond, in the Alternative)

57.    Plaintiffs reallege and incorporate by reference the preceding paragraphs 1 through 46 as though fully set forth here.

58.    Under New York law, negligent misrepresentation requires: (1) a special or privity-like relationship imposing a duty to provide correct information; (2) the provision of false information; (3) known reliance by the plaintiff for a serious business purpose; (4) justifiable reliance; and (5) resulting pecuniary loss.

59.    A special relationship existed between Plaintiffs and Defendants. Plaintiffs served as exclusive strategic and financial advisors in a complex cross-border transaction, and both sides understood Plaintiffs would rely on e2's and Richmond's disclosures about e2's financial condition, compliance, and legal exposure in advising e2 and structuring deals.

60.     Defendants supplied Plaintiffs with false and incomplete information, as detailed above, about e2's financial performance, compliance status, litigation and regulatory matters, and intentions regarding the BCA, the advisory process, and payment of fees.

61.     Defendants knew or should have known, in the exercise of reasonable care, that this information was inaccurate or incomplete and that Plaintiffs would rely on it for serious business purposes.

62.     Plaintiffs justifiably relied on Defendants' information in performing services, negotiating on e2's behalf, and deciding to continue the engagement and pursue the NETD transaction.

63.     As a direct and proximate result of Defendants' negligent misrepresentations, Plaintiffs sustained pecuniary loss in an amount to be proven at trial.

**WHEREFORE**, in the alternative to Count I, Plaintiffs request judgment on Count II against e2 and Richmond for compensatory damages, pre- and post-judgment interest, costs, and such other and further relief as the Court deems just and proper.

## COUNT III
## FRAUDULENT CONCEALMENT
### (Against e2 and Richmond, Jointly and Severally)

64.     Plaintiffs reallege and incorporate by reference the preceding paragraphs 1 through 46 as though fully set forth here.

65.     Under New York law, fraudulent concealment arises when a party with a duty to speak fails to do so, or when a party makes partial or ambiguous statements that are rendered misleading by the omission of material facts.

66.     Defendants had a duty to disclose fully and accurately in light of: (a) the special advisory relationship; (b) the exclusive mandate; and (c) the partial disclosures they chose to make about e2's finances, compliance, and legal risks.

67.     Defendants fraudulently concealed or failed to timely and fully disclose material facts, including, :

a.  the litigation and regulatory issues.

b.  non-compliance issues; and

c.  e2's intention to pursue alternative transactions and to frustrate the BCA and the agreed process while Plaintiffs continued to invest time and effort.

68.     Defendants concealed these facts knowingly and with the intent to induce Plaintiffs to continue their advisory role, accept reduced fees, and maintain their efforts on e2's behalf despite increased risk and a diminishing likelihood of a successful closing.

69.     Plaintiffs reasonably relied on Defendants' partial and misleading disclosures and were deprived of the chance to make informed decisions about whether to continue, modify, or terminate the engagement and how best to protect themselves.

70.     As a direct and proximate result of Defendants' fraudulent concealment, Plaintiffs suffered damages as previously alleged, in an amount to be proven at trial.

**WHEREFORE**, Plaintiffs request judgment on Count III against e2 and Richmond for compensatory and punitive damages, pre- and post-judgment interest, costs, and such other and further relief as the Court deems just and proper.

**COUNT IV**
**TORTIOUS INTERFERENCE WITH CONTRACT**
(Against Richmond Only)

71.     Plaintiffs reallege and incorporate by reference the preceding paragraphs 1 through 46 as though fully set forth here.

72.     Under New York law, tortious interference with contract requires: (1) a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intent to procure a breach; (4) actual breach; and (5) resulting damages.

73.     Plaintiffs had a valid and enforceable Engagement Agreement with e2.

74.    Richmond had actual knowledge of the Engagement Agreement and of its exclusivity and fee provisions. He signed, approved, or otherwise oversaw e2's adherence to that agreement.

75.    Richmond intentionally and improperly induced and participated in e2's breaches of the Engagement Agreement and the Process Letter by:

a.  arranging and attending undisclosed direct meetings and negotiations with Nabors and NETD in violation of the agreed process;

b.  directing or acquiescing in Nabors/NETD's decision to cancel weekly progress calls with Plaintiffs;

c.  encouraging or permitting independent fundraising and capital-raising efforts that conflicted with Plaintiffs' exclusivity;

d.  instructing or encouraging e2 staff to delay or withhold critical diligence information from Plaintiffs and counterparties; and

e.  pursuing alternative transactions and strategies designed to circumvent Plaintiffs' role and economic rights.

76.    Richmond's conduct, as alleged above, served his own personal and financial interests and was outside the proper scope of his duties to e2.

77.    As a direct and proximate result of Richmond's intentional and improper conduct, e2 breached its contractual obligations to Plaintiffs, including its exclusivity obligations and its duty to cooperate in good faith toward a closing that would have yielded Plaintiffs' earned fees.

78.    Plaintiffs suffered damages as a result of this interference, including lost fees and other damages previously described, in an amount to be proven at trial.

**WHEREFORE**, Plaintiffs request judgment on Count IV against Richmond for compensatory damages, punitive damages, pre- and post-judgment interest, costs, and such other and further relief as the Court deems just and proper.

**COUNT V**
**AIDING AND ABETTING FRAUD**
(Against Richmond Only)

79.    Plaintiffs reallege and incorporate by reference the preceding paragraphs 1 through 46 as though fully set forth here.

80.    Under New York law, aiding and abetting fraud requires: (1) an underlying fraud; (2) the defendant's actual knowledge of the fraud; and (3) the defendant's substantial assistance in the achievement of the fraud.

81.    As alleged in Count I, e2, acting through its officers, employees, and agents, committed fraud and fraudulent inducement against Plaintiffs.

82.    Richmond had actual knowledge of e2's fraudulent misstatements and omissions, including the true financial condition of e2, its compliance failures, its litigation and regulatory exposures, and the divergence between e2's public posture and its private intentions regarding the BCA and Plaintiffs' compensation.

83.    Richmond substantially assisted that fraud by:

a.  misrepresenting financial conditions and projections;

b.  taking a lead role in undisclosed meetings and negotiations with Nabors/NETD and other potential investors;

c.  directing or encouraging delays and obstructions in the diligence process;

21

d. offering repeated but misleading assurances to Plaintiffs about e2's intentions and ability to perform; and

e. personally benefitting from the continued engagement of Plaintiffs and the leverage their work provided in negotiations with third parties.

84.    Plaintiffs reasonably relied on the misstatements and omissions that Richmond helped to orchestrate and were damaged as a result, in an amount to be proven at trial.

**WHEREFORE**, Plaintiffs request judgment on Count V against Richmond for compensatory and punitive damages, pre- and post-judgment interest, costs, and such other and further relief as the Court deems just and proper.

## <u>CONCLUSION</u>

**WHEREFORE**, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants as follows:

A. On Counts I–V, awarding Plaintiffs compensatory damages;

B. Awarding punitive damages against the appropriate Defendants on the fraud, fraudulent inducement, fraudulent concealment, tortious interference, and aiding and abetting fraud claims;

C. Awarding pre- and post-judgment interest the maximum rate permitted by law;

D. Awarding Plaintiffs their costs of suit, including reasonable attorneys' fees where permitted by law; and

E. Granting such other and further legal or equitable relief as the Court deems just and proper.

Dated: December 23, 2025

Respectfully submitted,

GUNSTER, YOAKLEY & STEWART, P.A.
*Attorneys for Plaintiffs*
901 Ponce de Leon Blvd., 10th Floor
Coral Gables, Florida 33134
Telephone: 305-856-2444
Facsimile: 305-285-9227

By:    /s/ *Simon M. Lassel*
Milton Vescovacci
Florida Bar No. 520977
MVescovacci@Gunster.com
Simon M. Lassel, Esq.
Florida Bar No. 104526
SLassel@Gunster.com
TSimmons@Gunster.com

23